IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| MIGUEL SUAREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 5:23-CV-563-D |
| | ) | |
| ADVANCE AUTO PARTS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| BRIAN M. WATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 5:23-CV-611-D |
| | ) | |
| ADVANCE AUTO PARTS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

On October 9, 2023, Miguel Suarez ("Suarez") filed a federal securities class action complaint against Advance Auto Parts, Inc. ("Advance"), Thomas R. Greco ("Greco"), and Jeffrey W. Shepherd ("Shepherd") (collectively "defendants") in case number 5:23-CV-563 [D.E. 1]. On October 27, 2023, Brian M. Watson ("Watson") (collectively "complainants") filed a federal securities class action complaint against defendants alleging violations of the same federal securities statutes in case number 5:23-CV-611 [D.E. 1].

On December 8, 2023, in case number 5:23-CV-563, Kathleen Gentry ("Gentry") moved to consolidate the two actions, for appointment as lead plaintiff, and for approval of selection of counsel [D.E. 15] and filed a memorandum in support [D.E. 15-1] and several exhibits [D.E. 15-2 to 15-7]. On December 8, 2023, the City of Southfield General Employees' Retirement System

("Southfield") also moved to consolidate the two actions, for appointment as lead plaintiff, and for approval of lead counsel [D.E. 18] and filed a memorandum in support [D.E. 19] and several exhibits [D.E. 21, 21-1 to 21-4]. On December 8, 2023, Hany Magour ("Magour") also moved to consolidate the two actions, for appointment as lead plaintiff, and for approval of counsel [D.E. 23] and filed a memorandum in support [D.E. 24] and several exhibits [D.E. 25, 25-1 to 25-4].

On December 8, 2023, in case number 5:23-CV-611, Mark Lilly ("Lilly") (collectively "moving plaintiffs" or "movants") moved to consolidate the two actions, for appointment as lead plaintiff, and for approval of counsel [D.E. 5] and filed a memorandum in support [D.E. 6] and several exhibits [D.E. 6-1 to 6-7]. On December 8, 2023, Gentry moved to consolidate the two actions, for appointment as lead plaintiff, and for approval of selection of counsel [D.E. 7] and filed a memorandum in support [D.E. 7-1] and several exhibits [D.E. 7-2 to 7-7].

On December 17, 2023, in case number 5:23-CV-563, Magour filed a notice of non-opposition to competing motions for appointment as lead plaintiff [D.E. 37]. On December 21, 2023, Gentry filed a notice of non-opposition to competing motions for appointment as lead plaintiff [D.E. 39]. On December 29, 2023, Southfield responded in opposition to competing motions for appointment as lead plaintiff [D.E. 44]. On December 29, 2023, Lilly filed a notice of non-opposition to competing motions for appointment as lead plaintiff [D.E. 45].

On December 21, 2023, in case number 5:23-CV-611, Gentry filed a notice of non-opposition to competing motions for appointment as lead plaintiff [D.E. 14]. On December 29, 2023, Lilly filed a notice of non-opposition to competing motions for appointment as lead plaintiff [D.E. 15].[1]

---

[1] This citation and the prior citation are to the docket in case number 5:23-CV-611. Unless otherwise noted, the remaining citations to the docket in this order are to the docket in case number 5:23-CV-563.

2

Defendants take no position on the motions to consolidate. As explained below, the court consolidates the two actions, denies Magour's, Gentry's, and Lilly's motions for appointment as lead plaintiff, and grants Southfield's motion for appointment as lead plaintiff and for approval of lead counsel.

I.

Advance is an automobile parts and accessories supplier. See Compl. [D.E. 1] ¶ 2. At all relevant times, Greco was Advance's President and CEO. See id. at ¶ 14. Shepherd is, and at all relevant times was, Advance's Executive Vice President and CFO. See id. at ¶ 15.

On November 16, 2022, Advance held its quarterly earnings call for investors. See id. at ¶ 3. During the call, Greco announced "strategic pricing initiatives" designed to grow Advance's margins into 2023. Id. Greco stated "we've tested and will make surgical pricing actions in certain categories to enable us to better address changes in competitive pricing dynamics." Id. On February 28, 2023, Advance held its quarterly earnings call for the fourth quarter of 2022. See id. at ¶ 5. During the call, Greco stated "we continue to execute the disciplined inventory and pricing actions we discussed this quarter. These actions contributed to stronger results, and we expect to improve parts availability throughout 2023, which we believe is the single most important driver to accelerate line growth." Id. Greco expressed some caution about macroeconomic factors, but Advance's 2023 guidance "remain[ed] positive." Id. In its 2023 guidance, Advance projected "net sales of $11.4 billion to $11.6 billion and an operating income margin of 7.8% to 8.2%." Id. Shepherd also stated Advance remained "committed to paying quarterly cash dividends." Id.

On May 31, 2023, Advance held its quarterly earnings call for the first quarter of 2023. See id. at ¶ 6. Greco stated that Advance's "financial results in the first quarter were well below expectations." Id. Advance "had less price realization than plans, which put substantially higher

3

pressure on [its] product margin price." Id. During the call, Shepherd "revealed . . . that [Advance's] strategic pricing program resulted in [Advance] being 'unable to price to cover product costs in the quarter.'" Id. Advance downwardly revised its 2023 guidance "to an operating margin of 5% to 5.3%." Id. In response to this news, Advance's stock price fell 35% in one day. See id. at ¶ 7.

Suarez alleges that Advance's, Greco's, and Shepherd's statements during the November 2022 and February 2023 earnings calls "were false and/or materially misleading." Id. at ¶ 30. Suarez alleges that these alleged misrepresentations inflated the share price of Advance's stock between November 16, 2022, and May 31, 2023. See id. at ¶¶ 23, 31–41. Suarez alleges that he, and all others similarly situated to him, suffered economic loss as a result of Advance's correcting disclosure on May 31, 2023. See id. Suarez alleges these alleged misrepresentations violated sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a et seq., and Rule 10b-5, 17 C.F.R. 240.10b-5. See id. at ¶¶ 47–58. Suarez proposes a class of "all persons who purchased or otherwise acquired [Advance] securities between November 16, 2022 and May 30, 2023, inclusive." Id. at ¶ 1; see id. at ¶ 17.

II.

The Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104-67, 109 Stat. 737, applies to private securities litigation brought as a class action. See 15 U.S.C. § 78u-4. The court "shall not" appoint a lead plaintiff under the PSLRA until after the court decides any pending motion to consolidate "more than one action on behalf of a class asserting substantially the same claim or claims arising under" the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(ii). The court may consolidate actions if they "involve a common question of law or fact." Fed. R. Civ. P. 42(a); see Campbell v. Boston Sci. Corp., 882 F.3d 70, 74 (4th Cir. 2018). Common questions of law

4

and fact do not have to predominate. Rather, a district court must find only that they exist and that consolidation will prove beneficial. See, e.g., Hanes Cos. v. Ronson, 712 F. Supp. 1223, 1230 (M.D.N.C. 1988). Although actions involving the same parties are apt candidates for consolidation, complete identity of parties is not required. A common question of law or fact suffices. See, e.g., Safran v. Sheriff of Nassau Cnty., Nos. 12-CV-599, 12-CV-3296, 2012 WL 3027924, at *1 (E.D.N.Y. 2012) (unpublished); Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of Fed. Reserve Sys., 770 F. Supp. 2d 283, 286 (D.D.C. 2011).

Consolidation avoids unnecessary cost or delay. See EEOC v. HBE Corp., 135 F.3d 543, 550–51 (8th Cir. 1998); Ash v. PowerSecure Int'l, Inc., Nos. 4:14-CV-92, 5:14-CV-385, 5:14-CV-588, 2014 WL 5100607, at *1–2 (E.D.N.C. Oct. 10, 2014) (unpublished). "District courts have broad discretion under [Rule 42(a)] to consolidate causes pending in the same district." A/S J. Ludwig Mowinckles Rederi v. Tidewater Constr. Corp., 559 F.2d 928, 933 (4th Cir. 1977). In exercising its discretion, a court weighs the risks of possible prejudice and confusion from consolidation with the risks of inconsistent adjudications of common factual and legal issues, the burden on parties and judicial resources that multiple actions pose, and other efficiencies that a consolidated action has in lieu of multiple actions. See Campbell, 882 F.3d at 74; Arnold v. E. Air Lines, Inc., 681 F.2d 186, 190 (4th Cir. 1982), aff'd on reh'g, 712 F.2d 899 (4th Cir. 1983). With respect to securities actions, "consolidation is often warranted where multiple securities fraud class actions are based on the same public statements and reports." In re MicroStrategy Inc. Sec. Litig., 110 F. Supp. 2d 427, 431 (E.D. Va. 2000) (quotation omitted); see In re Facebook, Inc. IPO Sec. & Derivative Litig., 288 F.R.D. 26, 35 (S.D.N.Y. 2012).

As for moving plaintiffs' motions to consolidate, each defendant in case number 5:23-CV-563 is a defendant in case number 5:23-CV-611. The complaints are almost identical, including

5

the factual allegations and legal claims.[2] Both complaints allege violations of the same federal securities statutes based on the same alleged statements of defendants. Suarez and Watson bring both actions on behalf of the same proposed class over the same class period. Consolidating both actions would prevent duplicative discovery concerning defendants' public statements and reports. The court finds that common questions of law and fact are present, and consolidation would benefit all parties and assist the efficient resolution of the parties' dispute. See, e.g., Ash, 2014 WL 5100607, at *2. Accordingly, the court consolidates cases 5:23-CV-563 and 5:23-CV-611.

As for the plaintiffs' motions for appointment as lead plaintiff, the relevant portion of the PSLRA provides that

> the court shall consider any motion made by a purported class member . . . , including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . . [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under [the PSLRA] is the person or group of persons that— [1] has either filed the complaint or made a motion . . . ; [2] in the determination of the court, has the largest financial interest in the relief sought by the class; and [3] otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(i), (iii).[3]

As for the first requirement, Suarez and Watson are complainants. Magour, Gentry, Southfield, and Lilly are movants. Thus, all six satisfy the PSLRA's first criterion for the court to

---

[2] The complaints have one substantive difference: the complaint in case number 5:23-CV-611 has a paragraph of "scienter allegations." See Watson v. Advance Auto Parts, Inc., No. 5:23-CV-611, [D.E. 1] ¶ 42 (E.D.N.C. Oct. 27, 2023). The complaint in case number 5:23-CV-563 does not.

[3] The PSLRA also imposes a timeliness requirement on movants, but that requirement is not at issue.

6

presume they are "the most adequate" party to be lead plaintiff. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).

As for the movants' and complainants' alleged financial interest, the "financial interest in the relief sought is the loss that the defendants allegedly caused to the plaintiffs, first, by fraudulently inflating the purchase price of a security through misrepresentation or omission, and second, by subsequently disclosing corrective information that caused the security price to decrease." Ash, 2014 WL 5100607, at *2; see Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 342–46 (2005); Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 472–73 (4th Cir. 2011) (holding that the corrective disclosure may happen at a single time or gradually); Glaser v. Enzo Biochem, Inc., 464 F.3d 474, 479 (4th Cir. 2006) ("It is only after the fraudulent conduct is disclosed to the public, followed by a drop in the value of the stock, that the hypothetical investor has suffered a 'loss' that is actionable . . . .").

Here, the alleged corrective disclosure occurred on May 31, 2023. See Compl. ¶ 6. The court determines the financial interest of the would-be lead plaintiffs by either (1) the difference between the purchase price the plaintiff paid for the shares and the average trading price of the shares during the 90-day period beginning on May 31, 2023 ("the lookback period"), or (2) the difference between the purchase price the plaintiff paid for the shares and the average trading price of the shares between May 31, 2023, and the date on which the plaintiff sold its shares, if the plaintiff sold its shares before the end of the 90-day period and that sales price is higher than the lookback period price. See 15 U.S.C. § 78u-4(e). Advance stock traded at an average price of $69.50 per share during the lookback period. See [D.E. 15-4] 3.

Suarez does not allege a specific loss amount or that he sold his Advance stock. Suarez submitted a certification pursuant to federal securities laws. See [D.E. 4]. During the class period,

7

Suarez purchased 50 shares of Advance stock at a total cost of $5,910.40. See id. at 2. Accordingly, Suarez's financial interest is approximately $2,435.40.

Watson similarly does not allege a specific loss amount or that he sold his Advance stock. Watson submitted a certification pursuant to federal securities laws. See [D.E. 1-2].[4] During the class period, Watson purchased 25 shares of Advance stock at a total cost of $2,773.40. See id. Accordingly, Watson's financial interest is approximately $1,035.90.

Gentry alleges she lost $36,417.10 on her transactions in Advance securities. See [D.E. 15-1] 12. During the class period, Gentry purchased 600 Advance shares at a total cost of $82,200. See [D.E. 15-4] 3. Gentry kept all 600 Advance shares through the lookback period, resulting in a loss of $40,497.10. See id. Gentry also realized $4,080.00 in gains on Advance options. See id. at 2. Accordingly, Gentry's financial interest is approximately $36,417.10.

Southfield alleges it lost "approximately $92,246" on its transactions in Advance securities. [D.E. 19] 7. During the class period, Southfield purchased 1,800 shares of Advance stock at a total price of $221,074.64. See [D.E. 21-3] 2. On June 1, 2023, Southfield sold all 1,800 shares at $70.46 per share, resulting in a total loss (and approximate financial interest) of $94,246.64. See id.

Magour alleges he "lost $5,199 on his transactions in [Advance] securities." [D.E. 24] 2. During the class period, Magour purchased 85 shares of Advance stock at a total cost of $12,114.10. See [D.E. 25-3] 2. On April 27, 2023, Magour sold ten shares for a total of $1,225.40. See id. On May 31, 2023, Magour sold his remaining 75 shares of Advance stock for a total sale of $5,689.50. See id. Accordingly, Magour's financial interest is approximately $5,199.20. See id.

---

[4] This citation is to the docket in case number 5:23-CV-611.

8

Lilly alleges he lost "$7,915 as calculated on a FIFO basis, or $7,867 as calculated on a LIFO basis." [D.E. 6] 11.[5] During the class period, Lilly purchased 100 shares of Advance stock at a total cost of $14,865. See [D.E. 6-2] 2.[6] On August 14, 2023, Lilly sold his shares of Advance stock at a total sales price of $6,998. See id. Accordingly, Lilly's financial interest is approximately $7,867.

For the purposes of determining the lead plaintiff, Southfield is the complainant or movant with the largest financial interest in the requested relief. As for the Rule 23 requirements, the court considers whether the movant will be an appropriate class representative by determining (1) whether the movant's claims or defenses are typical of the class's claims or defenses, and (2) whether the movant will fairly and adequately protect the interests of the class. See, e.g., Hirtenstein v. Cempra, Inc., Nos. 1:16CV1303, 1:16CV1356, 1:16CV1451, 2017 WL 2874588, at *4 (M.D.N.C. July 5, 2017) (unpublished); Ash, 2014 WL 5100607, at *3–4; MicroStrategy, 110 F. Supp. 2d at 435; Fed. R. Civ. P. 23(a)(3), (4). The movant meets the first requirement when the movant's claims arise from the same event that gave rise to claims of other class members and the claims are based on the same legal theory. See, e.g., Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 425 (4th Cir. 2003). Southfield's claims arise out of the same factual questions of defendants' alleged misrepresentations and on the same legal questions under Rule 10b-5 and the Exchange Act. See Compl. ¶¶ 47–58; [D.E. 19] 7. Accordingly, Southfield satisfies the first Rule 23 requirement.

The movant meets the second requirement when the movant is represented by counsel who are qualified, experienced, and generally able to conduct the proposed litigation, and when the

---

[5] This citation is to the docket in case number 5:23-CV-611.

[6] This citation is to the docket in case number 5:23-CV-611.

movant is a class member whose interests do not conflict with those of other class members. See, e.g., Ash, 2014 WL 5100607, at *4; McLaurin v. Prestage Foods, Inc., 271 F.R.D. 465, 476 (E.D.N.C. 2010). Southfield's counsel is Robbins Geller Rudman & Dowd, a 200-lawyer firm with an extensive, successful track record in securities fraud litigation. See [D.E. 21-4]. Southfield is a public pension fund with "more than $115 million in assets." [D.E. 19] 8. The "purpose of the PSLRA was to encourage institutional investors to serve as lead plaintiff." Ollila v. Babcock & Wilcox Enters., Inc., 253 F. Supp. 3d 827, 831 (W.D.N.C. 2017). Accordingly, Southfield satisfies the second Rule 23 requirement. See, e.g., Hirtenstein, 2017 WL 2874588, at *5 (approving Robbins Geller Rudman & Dowd in a similar case). Thus, the court presumes Southfield is the most adequate party to serve as lead plaintiff.

Other movants and the complainants may rebut this presumption with proof that Southfield "will not fairly and adequately protect the interests of the class; or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No other plaintiff has presented such proof. Cf. [D.E. 37, 39, 45] (notices of non-opposition). Accordingly, the court appoints Southfield as lead plaintiff of the purported class and approves Robbins Geller Rudman & Dowd as lead counsel.

III.

In sum, the court GRANTS plaintiff Southfield's motion [D.E. 18] to consolidate cases 5:23-CV-563 and 5:23-CV-611, to be appointed lead plaintiff, and to approve Robbins Geller Rudman & Dowd as lead counsel. The two actions are consolidated and SHALL proceed under the caption at case number 5:23-CV-563. The court DENIES plaintiffs Gentry's, Lilly's, and Magour's motions [D.E. 15, 23], Watson, 5:23-CV-611 [D.E. 5, 7, 8], to the extent that they each request to be appointed lead plaintiff and to have their respective counsel chosen as lead counsel.

SO ORDERED. This 9 day of February, 2024.

                                                    *J. Dever*
                                                  **JAMES C. DEVER III**
                                                  United States District Judge